O'NEIL (BURLEW v.). See Case No. 2,167.
O'NEIL v. FINK. See Case No. 12,250.

## Case No. 10,529.

### ONEIL v. HOGAN.

[2 Cranch, C. C. 524.] [1]

Circuit Court, District of Columbia. Dec. Term, 1824.

WOMEN—SERVICE OF PROCESS—NOTICE TO APPEAR—DEFAULT.

A woman, against whom a justice of the peace has issued a warrant for a small debt, and who is notified by the officer to appear before the justice at a certain time and place named in the warrant, is bound to appear and answer; and if she does not, the justice may proceed ex-parte and render judgment against her by default.

Appeal from the judgment of John Chalmers, Esq., a justice of the peace for the county of Washington, for $20 and costs. The warrant was issued by E. Reynolds, Esq., on the 23d of June, 1823, directed to J. W. Beck, constable, commanding him to take into his custody, the body of Mary Oneil, and her safe keep, so that he should have her before a justice of the peace in and for said county, on the 25th day of June, instant, to answer to Thady Hogan in a plea of debt. "Hereof fail not, and make your return as aforesaid," &c. The constable's return was: "C. P. for trial for 10 o'clock, a. m., 26th instant, June. J. W. Beck." The following was indorsed on the warrant: "Judgment for plaintiff, $20 debt on interest, and fifty-eight cents costs. John Chalmers. 26 June, 1823."

Mr. Ashton, for appellant, contended that the judgment below was irregular, and that the justice had not jurisdiction, because the process was capias, and appointed a certain day for the hearing; and by the act of congress of the 1st of March, 1823 (3 Stat. 743) no female can be arrested for a debt. It appeared in evidence that she was not arrested, but was notified, by the officer, of the time and place when and where she was to appear and answer, to wit, at the office of Messrs. Wharton & Chalmers, two justices of the peace, at ten o'clock, a. m. Mr. Justice Wharton, being consulted by her, advised her not to attend, saying that the justice had no right to issue a capias against her, and that she was not bound to appear. She did not; and when the capias was returned, Mr. Wharton refused to act in the case; but Mr. Justice Chalmers being satisfied that the defendant was notified, gave judgment by default.

THE COURT (MORSELL, Circuit Judge, contra) was of opinion, that the defendant was bound to appear upon such a notice, and

that the justice might give judgment by default, and affirmed the judgment, but without costs. Quære?

## Case No. 10,530.

### O'NEIL v. SEARS.

[2 Spr. 52; [1] 24 Law Rep. 731.]

District Court, D. Massachusetts. Oct., 1862.

COLLISION—VESSEL AT ANCHOR—LOOKOUT—MUTUAL FAULT.

1. Where a vessel anchored in Boston Harbor, without an anchor-watch, was run into by another vessel while getting under way, and the collision could have been avoided if there had been an anchor-watch, both vessels were held in fault,—the one at anchor for not having a watch, and the other for not notifying the one at anchor of the intention to get under way,—it appearing that there was danger of a collision, and that it was known to the vessel getting under way that the other had no watch.

[Cited in The Lady Franklin, Case No. 7,984; The James M. Thompson, 12 Fed. 189; The Delaware, Id. 574.]

2. Where both vessels are in fault, the damages and costs are divided.

[Cited in The Clover, Case No. 2,908; The Mary Patten, Id. 9,223; Vanderbilt v. Reynolds, Id. 16,839; Wells v. Armstrong, 29 Fed. 220.]

This was a libel in personam against the respondent as owner of the yacht Actæa in a cause of collision.

C. G. Thomas, for libellant.
John A. Loring, for respondent.

SPRAGUE, District Judge. The collision took place between two schooners in the harbor of Boston, on a fair day, a whole-sail breeze blowing. The inference is, that one or both the vessels must have been in fault, because on such a day, and in such weather, a collision ought not to take place.

I shall first consider whether the libellant was in fault. His vessel, the January, was lying at anchor in Fore Point channel. The Actæa was getting under way, and in doing so ran foul of the January.

It is insisted that the January was in fault in two particulars:

1st. In being anchored in an improper place.

And 2d. In having no anchor-watch.

These facts are established by the evidence. An ordinance of the city of Boston provides, that all vessels at anchor in the harbor of Boston shall keep an anchor-watch at all times. Another ordinance of the city authorizes the appointment of a harbor-master, and provides, among other things, that he shall have authority "so to regulate the anchorage of vessels, that as far as may be practicable, ferry-boats may pass unobstructed, and the channel shall be kept clear, from the wharves to Castle Island." Among the regulations adopted by the harbor-master, is one

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]